STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-07-139

EDGAR E. PETERS and
SHERYL A. PETERS,

      Plaintiffs

v.

RICHARD D. O'LEARY, Individually
and as Trustee,

      Defendant

and

TOWN OF OGUNQUIT,

      Party-In-Interest

**ORDER AND DECISION**
(Title to Real Estate is Involved)

THE PARTIES – The plaintiffs Edgar Peters and Sheryl Peters are residents of Pasadena, California, and were represented by attorney James B. Bartlett of York, Maine.

The defendant Richard O'Leary is a resident of Norfolk, Virginia and was represented by attorney Thomas Danylik of Biddeford, Maine.

The Town of Ogunquit is a party-in-interest and was represented by attorney Gordon Ayer, of Kennebunk, Maine.

THE PROPERTIES – The plaintiffs acquired property located at 47 Ontio Way which abuts the O'Leary property by deed dated August 2, 2002 and recorded in the York County Registry of Deeds in Book 11848, Page 20 (See Plaintiffs' Exhibit 1). The

deed to the Peters' property contains an incomplete reference to a restrictive covenant that prohibits structures or fences of anything to be erected by the Grantee or his heirs or assigns. The complete language regarding this restriction is contained in the deed to the 10 foot strip of land itself conveyed to one of Peters' predecessors in title, Robert H. Bodholdt, by the O'Learys' predecessor in title, Anthony Tucceri by deed dated April 5, 1971 wherein it is recited "as part of the consideration for these premises is the restriction that no structures or fences of anything can be erected by the grantee, his heirs or assigns" (See Defendants' Exhibit 5). The Wall Location Plan for the plaintiffs prepared by Roaring Brook Consultants dated September 1, 2009 was admitted by stipulation (See Defendants' Exhibit 3) and depicts the 10-foot strip of land, its location and the location of a portion of Peters' retaining wall within it.

Defendant Richard D. O'Leary acquired property located at 51 Ontio Way (also described as 49 Ontio Way), Ogunquit, Maine from Anthony Tucceri by deed dated September 30, 1988, which deed is recorded in the York County Registry of Deeds in Book 4858, Page 285 (See Defendants' Exhibit 1). The property which borders on Marginal Way is comprised of two lots and a portion of a third referenced on an old recorded plan, entitled Plan Number 1 of Josiah Chase's Israel Head Property, Ogunquit dated July 27, 1892 (See Defendants' Exhibits 1 and 3). Mr. O'Leary later conveyed this property to a Trust of which he is trustee by deed dated February 24, 2004, which deed is recorded in the York County Registry of Deeds in Book 14011, Page 9 (See Defendants' Exhibit 2).

Defendant's property directly abuts the plaintiffs' property and lies between plaintiffs' property and the ocean.

NOTICE – All parties have received notice of the proceedings in accordance with the applicable provisions of the Maine Rules of Civil Procedure.

2

THE PLEADINGS – The plaintiffs have filed a four count first amended complaint which contains counts for statutory private nuisance: spite fence, common law private nuisance: spite fence, injunctive relief and a request for declaratory judgment. The defendant's first amended counterclaim has a claim for trespass damages and a separate claim in Count II seeking the removal of a structure within a portion of the 10' strip on the plaintiffs' side of their common boundary.

THE DISPUTE – A multi-day hearing has been held, I have viewed the properties with counsel and have carefully reviewed the written post-hearing submissions.

An earlier house on the plaintiffs' property was built around 1971 and a "Deck House" was located on their property at the time they purchased it in 2002. That house consisted of a basement level and a main floor with a deck around a portion of the house from which part of the O'Leary back yard could be seen.

The plaintiffs decided to tear down the house and replace it with a new structure which would add an additional one-half floor. This increase in height would both improve their views and reduce the defendant's privacy. The plaintiffs offered to show their plans to the defendant's wife. She declined stating that she had no right to influence the construction of a home on another person's property. The defendant did not explicitly oppose the plans nor object to the granting of the necessary municipal building permits.

At the time of the plaintiffs' purchase of their property the area along the common boundary was heavily vegetated with arbor vitae at the head of the driveway and native honeysuckle and bittersweet toward the shore. That dense vegetation provided privacy for the defendant and ranged in height from 8 to 14 feet.

3

While the plaintiffs do not have a view easement in their deed and while there was no restriction effecting their views contained in the defendant's deed, the plaintiffs had unobstructed views of the ocean from their property to the north, to the northeast and to the southeast.

The demolition of the existing deckhouse and the construction of the new structure began in late September of 2005. The Peters retained the services of Cape Neddick Builders to both undertake the demolition work and new home construction. Jerry Rose the owner of Cape Neddick Builders testified as to the challenge that the lot proposed, given its narrow width and dramatic elevation changes, with respect to construction, storage of materials, and movement of equipment. The excavation began and included the removal of all of the vegetation and growth that had spread on to the Peters' property. The plaintiffs' plans called for both the construction of a retaining wall within a portion of the 10' strip and a plan for extensive replantings of native species of a modest height generally consistent with the prior vegetation. As the construction progressed it became clear that the defendant, a now 78 year old former naval officer, former commandant of the United States Merchant Marine Academy and successful entrepreneur, was quite unhappy with the plaintiffs' new home.

In October of 2005 a work person hired by the plaintiffs trespassed on defendant's land and removed one bush of minimal value. The contractor also parked a piece of heavy equipment overnight on defendant's property causing no lasting damage. Neither the defendant nor anyone acting for him authorized the removal of the bush. No suits were brought and the police were not called.

Following the removal of the vegetative barrier, the character of the landscape between the two properties was changed. Mr. O'Leary quickly decided to have the remaining vegetation of honeysuckle and bittersweet on the northwest corner of his

4

property removed while the heavy equipment was there and available. It was removed.

During the course of the initial lay out and construction of the retaining wall associated with the Peters' new home, Mr. O'Leary, as confirmed by the testimony of Mr. Rose, brought to Mr. Rose's attention an issue involving a 10 foot "easement" (as Mr. O'Leary described it) and its application with respect to the position of a portion of the retaining wall to be constructed. Both Mr. Peters and Mr. Rose testified that they were aware of the restriction relative to the ten-foot (10') strip but concluded that the construction did not violate the restriction. Until the Peters sued the O'Learys in this case, Mr. O'Leary took no action to seek removal of that portion of the Peters' retaining wall encroaching within the 10 foot restricted strip. Neither did Mr. or Mrs. O'Leary, or any representative on their behalf, appear or participate in a proceeding before the Town of Ogunquit Zoning Board of Appeals wherein the Town of Ogunquit, through its Code Enforcement Officer, sought removal of the wall to bring it within compliance with side yard setback requirements (See Plaintiffs' Exhibit 46).

In February of 2006, having obtained a detailed landscaping plan from Jackie Nooney (Exhibit 50), Plaintiff Edgar Peters contacted Defendant in a telephone conversation and proposed that Defendant review his landscaping plan. During this telephone conversation, Plaintiff emphasized to Defendant the importance of preserving his views to the Atlantic Ocean.

In April of 2006, Plaintiffs' landscaping contractor, John Patten, reviewed Plaintiffs' landscaping plan with Defendant. Sometime during the spring of 2006, Defendant learned he had violated the Town of Ogunquit's Shoreland Overlay and Resource Protection District regulations with the removal of the vegetation on his side

5

of the property line. At that point, Defendant denied that he ever asked the workmen to do this and accused Plaintiffs of damaging his property during their construction.

On May 3, 206, the Town of Ogunquit Code Enforcement Officer, Paul Lempicki, ("CEO") convened a meeting at Defendant's residence to review the violations. Present at this meeting were plaintiffs, defendant, John Patten, and Jerry Rose. During this meeting, Defendant presented a poster board of pictures claiming that Plaintiffs had harmed and devalued his property by causing the removal of vegetation. Defendant made a statement to Plaintiffs to the effect that "they will pay for this." Also during this meeting, the CEO ordered that the vegetation that had been removed by Defendant from his property be replaced. Ultimately Plaintiffs and Defendant each paid for 50% of the cost of restoration of that vegetation. The meeting was generally professional but sometimes tense and uncomfortable. In written communications between the parties dated May 5, 8, 12 and 14, 2006 (Plaintiffs' exhibits 15, 16, 17, and 18), the parties exchanged information and claims about the circumstances of the status of the landscaping. Plaintiffs, at the same time, proposed to Defendant they would pay for the creation of a privacy screen with landscaping to ensure privacy for both parties and to preserve Plaintiffs' views of the Atlantic Ocean and the Marginal Way. In the written communications between the parties and orally, Plaintiffs emphasized to Defendant the importance of preserving their views no matter what type of landscaping was done by either party, while recognizing the mutual importance of privacy.

Following the exchange of these letters, there was yet another admitted trespass on the O'Leary property by Peters' agent. This involved some boulders to be used for Peters' landscaping/retention wall being placed on the O'Leary property and allowed to remain in place, due to weather conditions, for approximately one week (Defendants' Exhibit 13). This trespass caused Mr. O'Leary to write and complain to Mr. Peters,

6

although again there was no threat to take any legal action or to involve the authorities. The complaint resulted in a written apology.

During early spring of 2006, Mr. O'Leary began to consult with Ted Carter of Carter Design & Group regarding a plan to increase their privacy using plantings. Mr. Carter had previously provided landscaping design and installation services for the O'Learys at the Ontio Way property.

While Mr. O'Leary testified he advised Mr. Carter of his desire to restore the privacy he had previously enjoyed, he did not provide Mr. Carter with any specifications as to the plant material, nor were there any discussions involving using any vegetation or trees that would have the effect of impeding the ocean views or any views from the Peters' property. This was confirmed by Mr. Carter in his testimony and by Mr. O'Leary in his. Communications between Mr. O'Leary and Mr. Carter were via telephone and fax as the O'Learys were then in residence in Virginia.

Ultimately, Mr. Carter suggested using a combination of Cleveland pear trees and arborvitae. Mr. O'Leary testified that he had no knowledge of what these pear trees looked like or what their height or width would be at maturity. His sole introduction with respect to the trees and how they would be planted and what their appearance would be was via a computer generated overlay photo provided by Mr. Carter to him (See Defendant's Exhibit 11). According to Mr. O'Leary's testimony, it was based upon the appearance shown in the image produced by Mr. Carter that Mr. O'Leary authorized Mr. Carter to proceed. Mr. O'Leary also testified, which testimony was confirmed by Mr. Lempicki, that Mr. Lempicki was consulted prior to any work being performed and that permission was given to proceed with the planting. Mr. Lempicki was concerned only with municipal ordinances and was not authorized to determine whether the plantings would constitute a spite fence.

7

The Cleveland pear trees when planted were about 16 feet in height, according to Mr. Carter. They can, at maturity, reach a height of 25-30 feet or perhaps higher. Defendant told Plaintiffs he intended to plant a few pear trees but that the trees would be between the houses and would not interfere with Plaintiffs' views of the Atlantic Ocean and the Marginal Way, though they would be "tall." Defendant also stated that they would "enhance" Plaintiffs' property. Plaintiffs believed this was going to be a few decorative trees rather than a hedge or wall of vegetation. Plaintiffs specifically told Defendant that they would be concerned about anything planted below his old grill, which is about halfway down the property line, because that would interfere with Plaintiffs' views, particularly from the downstairs bedrooms but also from Plaintiffs' deck.

Defendant was aware that Ted Carter had planted a row of pear trees and arbor vitae on the boundary of the Levy property several years before. The Levy property is located a short distance up the hill from Defendant's property. Defendant was familiar with the plantings on the Levy property as he had visited or walked by the Levy property on a number of occasions. Ted Carter developed a plan to install, along the boundary line between Plaintiffs' and Defendant's properties, a hedge of arbor vitae that would grow to as high as 16 feet and a hedge of pear trees.

In June of 2006, without any notice to Plaintiffs, Defendant did plant an extensive unduly closely spaced row of pear trees and arbor vitae along the boundary line between the parties' properties in a manner intended to obstruct Plaintiffs' views of the Atlantic Ocean and the Marginal Way. Ultimately, he planted 16 pear trees and over 60 arbor vitae plants in this location. By the time Defendant planted these trees and arbor vitae, because of the fact his property is in the Shoreland Overlay District of the Town of Ogunquit, he knew the Town of Ogunquit would object to their removal based on

8

statements made to him by the CEO. The pear trees are now approximately 20' to 25' high and can theoretically grow 35' to 40' high. These trees are planted approximately 6' to 9' apart. Defendant planted the last set of pear trees in July 2007.

All was not however hostile between the parties.

At the outset of the demolition of the plaintiffs' home Mr. O'Leary also had a large willow removed at the suggestion of Mr. Rose who asserted it was a threat to damage the Peters' new residence. This was accomplished at Mr. O'Leary's expense.

While Mr. Carter was planting the trees in question in June of 2006, Mr. O'Leary and Mr. Peters had conversations regarding the row of arborvitae Mr. O'Leary wanted to plant along the westerly side of his driveway which is located on Peters' property (for which there is an expressed easement). That conversation resulted in an agreement with respect to these arborvitae which was reduced to writing by Mr. Peters' attorney (See Plaintiffs' Exhibit 41). The conversations also resulted in the parties' agreement to share equally the costs associated with the remediation relative to the vegetation removal on the O'Leary property. Each party paid Mr. Patten, who did the remediation work, about $1,500.00.

At this time, Mr. Peters also requested that Mr. O'Leary not install one pear tree near the Ontio Way end of the properties, believing that it would interfere with a southeast view from a room located in the southeast corner of the main floor of the Peters' new home. After investigating Mr. Peters' claim by entering the home and the room in question with the permission of the contractor, Mr. O'Leary instructed Mr. Carter's crew not to complete the installation of the tree "for which a hole was already dug and the tree already in place" as an accommodation to the Peters.

The installation of the Carter plan with some additional plantings of arborvitae was completed on or about June 13, 2006. Mr. O'Leary paid Carter Design Group in

excess of $45,000.00 for the trees, ground preparation and installation (See Defendants' Exhibits 27, 28, 29 and 30).

Some time in July of 2006 after the plantings were complete and after a cordial exchange between Mrs. Peters and Mrs. O'Leary regarding a wedding planned to take place at the Peters' property on the ensuing weekend, Mrs. O'Leary offered the use of the O'Leary property for parking and pictures. At the same time, Mr. and Mrs. Peters complained to Mr. O'Leary about two new trees about to be planted in replacement of two dying trees in the middle of the O'Leary property, claiming that, once planted they would block their view of the Marginal Way. No such claims were made relative to the pear trees. A demand was made by Mr. and Mrs. Peters that these trees not be planted. No similar demand was made regarding the existing pear trees and arborvitae.

By deed dated April 5, 1971, Defendant's predecessor in title, Anthony Tucceri et al. conveyed a 10 foot strip of land from what was formerly part of Defendant's lot, to Plaintiffs' predecessor in title, Richard H. Bodholdt. At the same time, Tucceri retained an easement for his driveway across the southeasterly corner of Plaintiffs' lot and inserted a restriction for that 10' strip against the erection of any fences or structures.

Sometime shortly after 1971, Plaintiffs' predecessor in title constructed a home on Plaintiffs' lot. The deck attached to that home on the easterly side of Plaintiffs' lot was built within the 10' strip and was arguably in violation of the foregoing restriction. Further, at about the same time, Plaintiffs' predecessor in title built a wooden retaining wall also within the 10 foot strip and also arguably in violation of the foregoing restriction.

At no time did Defendant's predecessor in title object to the violations of the 10 foot restriction by the deck and retaining wall nor did Defendant ever object to the violations of the 10 foot restriction by the deck and retaining wall, neither during the

10

time of ownership by Plaintiffs' predecessor in title nor during Plaintiffs' ownership prior to the demolition of the prior house and retaining wall.

During the construction of the new retaining wall on Plaintiffs' property the Town of Ogunquit objected on the grounds the wall was a structure and was built within the Town's setback requirement. Plaintiffs appealed this ruling to the Ogunquit Zoning Board of Appeals and obtained a decision that, under the Ogunquit Land Use Code, a retaining wall is not considered a structure. Defendant received due notice of Plaintiffs' appeal and did not participate in any way in the appeal process.

The evidence reflected no further interaction between the parties until the present Complaint was filed in November of 2008 save for a request by the Peters that they be permitted to plant lilacs on the O'Leary property in conjunction with their landscaping scheme and to shield from their view the arborvitae planted on the O'Leary property. Mr. O'Leary gave the Peters the consent to plant the lilacs as requested.

THE CLAIMS

SPITE FENCE – STATUTORY CLAIM – COUNT I

Pursuant to 17 M.R.S.A. §2801, "Any fence or other structure in the nature of a fence, unnecessarily exceeding 6 feet in height, maliciously kept and maintained for the purpose of annoying the owners or occupants of adjoining property, shall be deemed a private nuisance."

Black's Law Dictionary defines "fence" as "a hedge (*emphasis added*), structure, or partition, erected for the purpose of inclosing a piece of land, or to divide a piece of land into distinct portions, or to separate two contiguous estates." Webster's Ninth New Collegiate Dictionary (1985) defines a "fence" broadly as "a barrier intended to

11

prevent escape or intrusion or to mark a boundary;" and further defines a "hedge" as "a fence (*emphasis added*) or boundary formed by a dense row or shrubs or low trees."

Maine statutes have defined the term "fence" in broad terms. Under 30-A M.R.S.A. Section 2951, the term "legal fences" is defined as "All fences 4 feet high and in good repair, consisting of rails, timber, stone walls, iron or wire and brooks, rivers, ponds, creeks, ditches, and hedges or other things which in the judgment of the fence viewers having jurisdiction thereof are equivalent thereto ...." (Emphasis added). The structures consisting of two hedges of arbor vitae and pear trees fall well within these definitions of a "fence."

I find by a preponderance of the evidence that the defendant's decision to plant an extensive number of closely spaced tall pear trees and arbor vitae created two dense hedges limiting the plaintiffs' views of the oceans and likely to limit those views further as the trees continue to grow. A tall two-tiered wall has been created. While this wall of dense vegetation certainly increases the defendant's privacy, I conclude, based on comments made by the defendant, actions taken by the defendant and the extent of and types of plantings that the dominant reason for such a massive series of plantings, that Ted Carter refers to as "installations", was to punish the plaintiffs by significantly reducing their prized view of the Atlantic.

### COMMON LAW – SPITE FENCE – COUNT 2

The evidence in this case also tracks the Restatement (Second) of Torts Concerning Private Nuisance Actions. The facts support Plaintiffs' claim for common law nuisance as stated in the "Nuisance" sections of the Restatement (Second) of Torts which the Law Court has cited as being consistent with Maine law. See e.g. Jacques v. Pioneer Plastics, Inc. 676 A.2d 504 (Me. 1996), Jerryco v. Union Station Plaza Associates, 625 A.2d 907, 8 (Me. 1993). See Sections 822, 826, 829(b) and 830.

12

Counts III and IV will be discussed later in the sections dealing with relief.

## COUNTERCLAIMS

The plaintiffs did, through their agents, trespass on defendant's land by cutting a bush, parking equipment and placing boulders on defendant's land. Damages of $1.00 on Count I will be awarded.

The second counterclaim involves the placement of a portion of a retaining wall and related structure within the 10 foot no build strip. This land is owned by the plaintiffs and is on their side of the spite fence of trees and bushes. While the retaining wall is not a structure for purposes of the Ogunquit ordinances it is a "structure" within the more common meaning used in the deed restriction which prohibits "structures or fences of anything" from being erected in the strip.

However, while the retaining wall should not have been built within 10 feet of the property line, I will not order its removal. The wall causes no harm to the defendant, was not objected to earlier, and its removal would be costly and complicated for the plaintiffs. The wall serves a useful environmental purpose as part of an elaborate drainage system and will remain.

## REMEDIES

The plaintiffs have requested either an award of damages or an order requiring the removal of or trimming of trees as a remedy under Counts I and II governing spite fences.

They submitted the testimony of an appraiser supporting the claim that the spite fence, having reduced their views, reduced the property value by $150,000. The appraiser was given a difficult task and made a valiant effort but I found his presentation confusing and unpersuasive. While I am fully convinced that the spite

13

fence, if it remained, would reduce the value of the property I am not convinced that the reduction in value has been adequately quantified.

The spite fence of trees and bushes needs to be removed. The defendant cannot plant far more trees than had existed harming his neighbors in the process and then claim that he cannot be required to remove any of the trees because they are in the Shoreland Overlay District. The remedy ordered will not cause any environmental damage. If the defendant is subject to a fine from the Town that will be unfortunate but the defendant, having built a spite fence, cannot be allowed to maintain it.

Lastly, as a matter of discretion, I am awarding no punitive damages. While I find by clear and convincing evidence that the plantings were done with malice I find that many of the defendant's actions were gracious. He was most civil while in court and I see no need to impose additional damages to deter him or others.

I have deliberately chosen an 8-foot rather than a 6-foot height limitation to preserve privacy, reduce the stress on the bushes and more closely approximate pre-existing conditions. The extra 2 feet should not significantly affect the plaintiffs' views.

The entries are:

Judgment for the plaintiffs on Counts I, II, III and IV of the first amended complaint with costs.

Judgment for the defendant in the amount of $1.00 on Count I of the first amended counterclaim.

Judgment for the plaintiffs on Count II of the first amended counterclaim.

The defendant shall within 60 days remove the first three pear trees along the boundary line between Plaintiffs' and Defendant's properties running from Ontio Way in a northerly direction, plus the last 6 trees at the end of this row of pear trees and trim all of the arbor vitae planted along the boundary between Plaintiffs' and Defendant's properties and running along the northerly boundary of Defendant's property to a height no greater than 8 feet. The defendant, his successors, heirs, and assigns or agents are permanently enjoined from installing or maintaining any similar structure or planting exceeding 8 feet in height in the same

14

locations as the locations of the removed trees or trimmed arbor vitae or in any other location on Defendant's property that would impair Plaintiffs' views of the Atlantic Ocean.

The plaintiffs shall be responsible for recording an attested copy of the judgment and for paying the appropriate recording fees.

Dated:        August 31 , 2010

Paul A. Fritzsche
Justice, Superior Court


The appeal period has expired without action or final judgment has been entered after remand following appeal.


Dated: _____        _____
                                                                        Clerk


ATTORNEY FOR PLAINTIFF:
JAMES B. BARTLETT, ESQ.
JAMES B BARTLETT PA
PO BOX 836
YORK ME    03909

ATTORNEY FOR DEFENDANT:
THOMAS DANYLIK, ESQ.
WOODMAN EDMANDS DANYLIK & AUSTIN
PO BOX 468
BIDDEFORD ME    04005

ATTORNEY FOR PARTY-IN-INTEREST:
GORDON C. AYER, ESQ.
WATERMARK LAW
PO BOX 367
KENNEBUNK ME    04043